# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

KAHALA FRANCHISE CORP.,
  a Delaware Corporation,

        Plaintiff,

v.                                    C.A. No. _____

FAKHRY MAIZER,
  a resident of Illinois,

        Defendant.

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

This is an action for breach of contract, trademark infringement, and unfair competition arising from Defendant Fakhry Maizer's failure to pay royalties and failure to comply with post-termination obligations under his Franchise Agreement with Plaintiff Kahala Franchise Corp. ("Kahala"). Kahala is the franchisor of the Great Steak & Potato ("Great Steak") system. Kahala seeks to enforce a post-termination covenant not to compete contained in the Franchise Agreement executed by Defendant Maizer, a former Great Steak franchisee who, despite Kahala's termination of his Great Steak franchise in Milwaukee, Wisconsin, immediately began operating a competing restaurant that offers cheesesteak sandwiches, french fries, and related products for sale at the very same location. Defendant Maizer is also continuing to use the Great Steak proprietary marks at the restaurant without a license or Kahala's consent. The continued use and enjoyment of the Great Steak trademarks and trade name is a violation of the Lanham Act, 15 U.S.C. §§ 1114 *et seq*. Kahala seeks monetary, injunctive, and other relief against Defendant Maizer for the reasons set forth below.

## Parties

1.      Plaintiff Kahala Franchise Corp. is a Delaware corporation with its principal place of business at 9311 E. Via De Ventura, Scottsdale, Arizona. It is engaged in the business of franchising independent businesspersons to operate, among other things, Great Steak & Potato Company businesses. Franchisees are licensed to use the Great Steak trademarks, name, and trade dress and to operate under the Great Steak system, which involves the production, merchandising, and sale of sandwiches and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.

2.      Defendant Fakhry Maizer is a natural person and, upon information and belief, is a resident of the State of Illinois. Defendant was the owner of a Great Steak restaurant located at 7601 West Hampton Road, Milwaukee, Wisconsin, pursuant to a Franchise Agreement dated May 23, 2006. Defendant was licensed to use the Great Steak trademarks, trade name, and trade dress at the restaurant pursuant to the Franchise Agreement.

## Jurisdiction and Venue

3.      This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121; and 28 U.S.C. §§ 1331, 1332(a), 1338, & 1367(a). The amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      The Court has *in personam* jurisdiction over Defendant because he conducts business in this district and the events giving rise to the claims occurred in this district.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## Background Facts

### The Great Steak System

6. Kahala is the franchisor of the Great Steak franchise system.

7. It is also the owner of the trademarks, copyrights, service marks, trade dress, and trade name "The Great Steak & Potato Company," and related marks. Kahala licenses others to use these marks and trade name and, along with its predecessors, has used them continuously to identify its Great Steak restaurants and the products associated with those restaurants.

8. The Great Steak trademarks and trade name are distinctive and famous and have acquired secondary meaning.

9. They are also utilized in interstate commerce.

10. The Great Steak marks have been widely advertised and promoted by Kahala over the years. Kahala and its Great Steak franchisees have spent significant amounts of money on advertising and promoting the Great Steak marks.

11. Kahala and its Great Steak franchisees currently operate over 200 Great Steak restaurants in the United States. Great Steak restaurants feature the Great Steak distinctive trademarks and trade dress, including the unique color scheme and lettering style. In the twenty-seven years since the system began, millions of consumers have been served in Great Steak restaurants.

12. As a result of the extensive sales, advertising, and promotion of items identified by the Great Steak marks, the public has come to know and recognize the Great Steak marks, and to associate them exclusively with the products and services offered by Kahala and its Great Steak franchisees.

13. The Great Steak marks are among the best and widely known trademarks in the

3

United States today, and are assets of inestimable value to Kahala, representing and embodying the considerable goodwill and favorable reputation of Kahala.

### The Obligations of Defendant Under the Franchise Agreement

14. In signing the Franchise Agreement, Defendant received the exclusive right to use the Great Steak system and marks in the operation of his franchise. (Franchise Agreement ¶ 1.1.)

15. Under the Franchise Agreement, Defendant agreed to use the Great Steak proprietary marks, including, but not limited to, the trademarks, logos, emblems, trade dress and other indicia of origin, "in accordance with the System and . . . standards and specifications" of Kahala. (*Id.* ¶ 6.1(d).) He also agreed to use the "Proprietary Marks licensed by this Agreement solely in the manner prescribed" by Kahala. (*Id.* ¶ 6.3(c).)

16. Defendant agreed that any failure to pay, perform, observe or comply with any of his duties or obligations under the Franchise Agreement would constitute a default subject to injunctive relief. (*Id.* ¶¶ 14.1(b); 14.8.)

17. Defendant agreed that he would not do or perform, directly or indirectly, any act that would impair or prejudice the goodwill associated with Great Steak's proprietary marks. (*Id.* ¶¶ 6.2(a); 6.2(d).)

18. Under the Franchise Agreement, Defendant agreed as follows:

    (a) to pay Kahala a royalty fee of the greater of 6.0 percent of the gross sales of the business or $400 (*id.* ¶ 5.2);

    (b) to accurately report each week gross sales for the preceding calendar week, at which time all fees required to be paid were to be remitted (*id.*);

    (c) to pay interest on any unpaid royalty fees due under the Franchise Agreement (*id.* ¶ 5.11);

(d) to pay a late fee of $100 per report if he failed to submit any financial statements, forms, reports or records required to be provided under the Franchise Agreement by its due date, including weekly gross sales for calculating royalty fees (*id.*);

(e) to pay a $50.00 late fee for each late payment (*id.*); and

(f) to establish and maintain a bank account and electronic fund transfer information for that account for royalty and advertising fees payable to Kahala (*id.* ¶ 5.4.).

19. Under the Franchise Agreement, if Defendant fails to pay royalty fees in a timely manner, he is entitled to a written notice and seven (7) days to cure his financial default. (*Id.* ¶ 14.2(a).) If he fails to cure the financial default within the time provided, Kahala has the right to immediately terminate the Franchise Agreement. (*Id.* ¶¶ 14.1(b); 14.2(a); 14.4.)

### Post-Termination Obligations

20. Under the Franchise Agreement, Defendant agreed that upon termination his right to use the Great Steak proprietary marks and system would cease and he would promptly comply with his post-termination obligations, including, but not limited to, ceasing to use the Great Steak marks, name, and trade dress. (*Id.* ¶¶ 6.2(c), 14.4(b).)

21. Defendant also agreed that upon termination he would immediately return to Kahala, at Defendant's expense, all operations manuals, advertising materials, stationery and printed forms, and all other proprietary information relating to the operation or business goodwill of the franchised business. (*Id.* ¶ 14.4(c).)

22. Defendant also accepted a reasonable post-termination covenant against competition as part of the Franchise Agreement. Pursuant to Paragraph 14.5(c), Defendant agreed that:

> During the term of this Agreement and for a period of two (2) years after its termination for any cause, Franchisee shall not engage in any business in competition with any *Great Steak & Potato* restaurant. The provisions of this Agreement bind Franchisee in any capacity, including as a franchisee, sole proprietor, partner, limited partner, member, employer, franchisor, stockholder, officer, director or employee. For purposes of this paragraph, "competition" means the franchising, ownership, or operation of a restaurant similar to a *Great Steak & Potato* outlet at the location identified in *Section 1.1* of this Agreement, or within a geographical area consisting of: (1) during the term of this Agreement, anywhere else; and (2) after termination of this Agreement, a ten (10) mile radius from the location of any *Great Steak & Potato* restaurant of Franchisor, its third party licensees or its third party franchisees, including the restaurant licensed by this Agreement. The terms "*Great Steak & Potato* restaurant" and "*Great Steak & Potato* outlet" include not only the restaurants and outlets now in existence, but also those established at a later date. The term of this covenant will be extended by any time consumed in litigation to enforce it in both trial and appellate courts. If a court of competent jurisdiction determines that the restrictions in this paragraph are excessive in time, geographic scope, or otherwise, the court may reduce the restriction to the level that provides the maximum restriction allowed by law.

(*Id.* ¶ 14.5(c).)

23. Defendant agreed that upon termination and for a period of two (2) years thereafter he would "not divert or attempt to divert any business, customers, or potential customers of the Great Steak & Potato System to any competitor, by direct or indirect inducement or otherwise. (*Id.* ¶ 14.5(d).) He also agreed not do or perform any act, directly or indirectly, that harms the goodwill or reputation of Great Steak or the Great Steak system. (*Id.*)

24. Upon termination, Defendant agreed that he would promptly pay Kahala any damages incurred by it as a result of his default(s) and attorneys' fees, if Kahala is the prevailing party in any subsequent litigation. (*Id.* ¶ 16.10.)

## **Defendant's Defaults**

25. As set forth above, Defendant agreed to pay royalty fees on a weekly basis, as well as interest on any unpaid royalty fee due under the Franchise Agreement.

6

26. Defendant, however, failed to pay these fees as required. On January 18, 2010, Kahala served Defendant with a notice to cure advising him that he was in default of the Franchise Agreement for failing to pay royalty fees. At the time, Defendant owed Kahala $65,335.00 in fees. The notice also informed Defendant that if he did not cure his default, Kahala may elect to terminate the Franchise Agreement.

27. Despite notice and ample opportunity, Defendant failed to cure his financial default in a timely manner.

28. Pursuant to the applicable provisions of the Franchise Agreement, Kahala sent Defendant a Notice of Termination dated June 1, 2010, terminating the Franchise Agreement and demanding that Defendant cease using the Great Steak trade name and proprietary marks immediately upon the effective date of termination. In addition, the Notice demanded that he comply with his post-termination obligations under the Franchise Agreement.

29. After receiving Kahala's Notice of Termination, Defendant made a number of small payments to Kahala. The parties also engaged in negotiations to reinstate the Franchise Agreement, execute a promissory note for monies owed, and permit Defendant's restaurant to reopen as a Great Steak franchise either at its current location or at a different location.

30. Despite Kahala's numerous attempts to contact him, Defendant stopped responding to Kahala.

31. As a result, Kahala retracted its offer to reinstate and permit the reopening of Defendant's Great Steak franchise.

32. To date, Defendant has not complied with his post-termination obligations.

33. Despite receiving Kahala's Notice of Termination, Defendant continued to operate a business that competed with Kahala and its franchisees at the very same location as

7

Defendant's formerly licensed Great Steak restaurant. Defendant continued to use and display the Great Steak trademarks, trade name, logos, and promotional materials at the location of his restaurant and operated a co-branded restaurant at that location under the names "Hook Fish & Chicken" and "Steaks & Potato," which is a competing restaurant that sells cheesesteak sandwiches, french fries, and related products.

34. A visit to Defendant's "Hook Fish & Chicken" and "Steaks & Potato" co-branded restaurant by a Kahala representative on or about December 29, 2010, revealed that Defendant continued to use and display the Great Steak trademarks, trade name, logos, and promotional materials to sell cheesesteak sandwiches, french fries, and related products to the public that were not authentic Great Steak products.

35. As of December 30, 2010, Defendant owed Kahala a total amount of $103,302.89 in unpaid royalty fees.

36. Defendant's actions have caused and continue to cause irreparable harm to Kahala, including harm to Kahala's reputation and goodwill.

## COUNT I
### (Breach of Contract – Nonpayment of Fees)

37. The allegations of paragraphs 1 through 36 are hereby incorporated by reference.

38. The failure to pay all monies due under the Franchise Agreement after notice and opportunity to cure constitutes breaches of the Franchise Agreement and provides good cause for terminating that Agreement.

39. Based on this default, Kahala sent Defendant a written notice of termination dated June 1, 2010, terminating the Franchise Agreement.

40. Defendant continues to ignore Kahala's demand for payment of all past-due monies and has failed to comply with his post-termination obligations.

41. Defendant continues to use the Great Steak marks, name, logos, and other materials to operate a restaurant selling sandwiches and related products, as if he was a licensed Great Steak franchisee.

42. As a result of these actions, Kahala has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT II
### (Breach of Contract – Covenant Not To Compete)

43. The allegations of paragraphs 1 through 42 are hereby incorporated by reference.

44. Pursuant to Paragraphs 14.5(c) and 14.5(d) of the Franchise Agreement, Defendant agreed that he would cease operating his franchised business and refrain from competing with Great Steak and its other franchisees following the termination of his Franchise Agreement. Pursuant to Paragraphs 14.5(c) and 14.5(d), Defendant agreed for at least two years from the date the franchised business is terminated, that he would not: (1) divert or attempt to divert any business, customer, or potential customer from Great Steak and its franchisees; (2) engage in a competing business within 10 miles of his formerly-licensed Great Steak franchise; and (3) engage in a competing business within 10 miles of any other Great Steak franchise.

45. Defendant has breached Paragraphs 14.5(c) and 14.5(d) of the Franchise Agreement by continuing to engage in a competing business at the same location formerly assigned to Defendant under the terms of the Franchise Agreement.

46. Kahala has a legitimate business interest in its valuable confidential business information, substantial business relationships with existing and prospective customers, and the goodwill associated with its Great Steak trademarks and trade names in the territory governed by the Franchise Agreement.

47. As a result of Defendant's operation of a directly competitive business at the same location where Defendant formerly operated a licensed Great Steak franchise, Kahala and its other Great Steak franchisees in Wisconsin and elsewhere have suffered irreparable harm and will continue to suffer irreparable harm.

48. Kahala has no adequate remedy at law to protect its substantial business and property rights, and the damage from Defendant's activities is considerable and continuing and thus not capable of ascertainment at this time.

49. The non-competition provision in the Franchise Agreement is reasonably necessary to protect Kahala's legitimate business interests.

50. As a result of these actions, Kahala has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT III
### (Trademark Infringement)

51. The allegations of paragraphs 1 through 50 are hereby incorporated by reference.

52. The use in commerce of the Great Steak trademarks and trade name outside the scope of the Franchise Agreement and without Kahala's consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendant are licensed, franchised, sponsored, authorized, or otherwise approved by Kahala. Such

unauthorized use of the Great Steak trademarks and trade name infringes Kahala's exclusive rights in its trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114 and applicable state law.

53. The acts were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

54. As a result of these actions, Kahala has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT IV
### (Unfair Competition)

55. The allegations of paragraphs 1 through 54 are hereby incorporated by reference.

56. The use in commerce of the Great Steak trademarks and trade name outside the scope of the Franchise Agreement and without the consent of Kahala is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person. Such unauthorized use of the Great Steak trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a) and applicable state law.

57. The acts were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

58. As a result of these actions, Kahala has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## Prayer for Relief

WHEREFORE, Kahala prays that this Court:

a. Enter a declaratory judgment that the conduct of Defendant violates the terms of the Franchise Agreement, and constitutes good cause for terminating the Franchise Agreement;

b. Enter a judgment in favor of Kahala for the damages incurred by it as a result of the breaches of the Franchise Agreement by Defendant;

c. Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreement as of the effective date of the Notice of Termination, or as otherwise provided by applicable law;

d. Enjoin Defendant and all those acting in concert with him from infringing upon the Great Steak trademarks, trade dress, and trade name and from otherwise engaging in unfair competition with Kahala;

e. Enjoin Defendant and all those acting in concert with him from engaging in any business that sells any products or services similar to those sold as part of the Great Steak franchise system for the period of two years from the date Defendant is first in compliance with his post-termination obligations under the Franchise Agreement;

f. Enter an injunctive order directing Defendant to comply with his post-termination obligations under any contract with Kahala or any of its affiliates or subsidiaries, including, but not limited to, the Franchise Agreement;

g. Enter an injunctive order directing Defendant and all those acting in concert with him to cease using and return immediately Kahala's confidential and proprietary materials, including but not limited to, Kahala's manuals and software;

h. Award Kahala damages for Defendant's post-termination use and/or display of Kahala's registered marks;

i. Order an accounting of Defendant's revenue, earnings, and profits for the purpose of determining unpaid royalty fees for the remaining term of the Franchise Agreement;

j. Award Kahala all unpaid royalty fees due for the remaining term of the Franchise Agreement;

k. Award Kahala judgment against Defendant for the damages it has sustained and the profits Defendant has derived as a result of his actions, and that such damages be assessed in a separate accounting procedure and trebled in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

l. Award Kahala prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

m. Award Kahala such exemplary or punitive damages as are deemed appropriate because of the willful, intentional, and malicious nature of the conduct of Defendant;

n. Award Kahala its costs and attorneys' fees incurred in connection with this action pursuant to contract and § 35 of the Lanham Act, 15 U.S.C. § 1117; and

o. Award Kahala such other relief as this Court may deem just and proper.

Respectfully submitted,

      /s/ Craig P. Miller
Craig P. Miller (#26961X)
GRAY, PLANT, MOOTY, MOOTY
  & BENNETT, P.A.
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone:    (612) 632-3388
Facsimile:    (612) 632-4388
Craig.Miller@gpmlaw.com

David E. Worthen
Jimmy Chatsuthiphan
GRAY, PLANT, MOOTY, MOOTY
  & BENNETT, P.A.
2600 Virginia Avenue, N.W., Suite 1111
Washington, DC 20037
Telephone:    (202) 295-2200
Facsimile:    (202) 295-2250
David.Worthen@gpmlaw.com
Jimmy.Chatsuthiphan@gpmlaw.com

*Attorneys for Plaintiff*
Kahala Franchise Corp.

Dated: January \_\_\_\_, 2011

14